# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANIEL PANTANO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of the U.S. Social ) <br> Security Administration,[1] ) <br> ) <br> Defendant. ) | No. 15 C 3868 <br><br> Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Pantano ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration (the "Administration") denying his Social Security disability insurance ("SSDI") application, under Title II of the Social Security Act ("the Act"). Plaintiff has filed a memorandum in support of his motion for summary judgment [Doc. No. 10] and the Commissioner has filed a cross-motion for summary judgment [Doc. No. 17]. After reviewing the record, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

## BACKGROUND

### I. Procedural History

Plaintiff filed an SSDI application on July 11, 2012, alleging a disability onset date of July 1, 2012 due to a spinal injury, later amending his application to

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

allege a disability onset date of February 1, 2011. (R. 151-54.) His initial application was denied on October 10, 2012, and again at the reconsideration stage on January 24, 2013. (R. 75, 83.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on January 31, 2013, and the hearing was scheduled on October 16, 2013. (R. 23-67, 98-99.) Plaintiff appeared at the hearing with his attorney and offered testimony along with his wife. (R. 29-67.) A vocational expert ("VE") also appeared and testified. (*Id.*) On November 8, 2013, the ALJ issued a written decision denying Plaintiff's application for SSDI. (R. 9-19.) The Appeals Council ("AC") denied review on February 25, 2015, leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II.   ALJ Decision

On November 8, 2013, the ALJ issued a written determination denying Plaintiff's DIB application. (R. 19-34.) As an initial matter, the ALJ found that Plaintiff had met the insured status requirements of the Act through December 31, 2016. (R. 14.) At step one, the ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since his alleged onset date of February 1, 2011. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of: degenerative disc disease – status post fusion and instrumentation, and obesity. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

2

listed impairments ("Listing[s]") contained in 20 C.F.R. Part 404, Subpart P, App'x 1. (*Id.*) Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (R. 15.) The ALJ also found that Plaintiff's RFC was further limited to: no climbing of ladders, ropes, and scaffolds; only occasional climbing of ramps and stairs; occasional stooping; and frequent balancing, kneeling, crouching, and crawling. (*Id.*) At step four, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a mailroom clerk. (R. 32.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act, and denied Plaintiff's application for SSDI. (R. 18-19.)

## DISCUSSION

### I.  ALJ Legal Standard

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. Analysis

Plaintiff asserts that the ALJ made four errors. First Plaintiff argues that the ALJ failed to support her step-three finding – that Plaintiff's disability did not meet the requirements for Listing 1.04 – with substantial evidence. Second, the Plaintiff

argues the ALJ incorrectly weighted the credibility of Plaintiff's pain testimony into her step-four RFC determination. Third, Plaintiff argues that the ALJ failed to properly factor Plaintiff's obesity into any relevant portions of her analysis. Finally, the Plaintiff argues the Appeals Council failed to consider his post-hearing records.

### a. The ALJ's Step-Three Determination.

At step-three, an ALJ must consider whether a claimant's impairments meet or medically equal a [Listing], either singly or in combination. 20 C.F.R. § 405.1520(a)(4)(iii). An ALJ should identify the [Listing] by name and offer more than a perfunctory discussion. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). The ALJ must also obtain the opinion of a medical expert on the issue. *Id.*; s*ee also Hopgood ex rel. L.G. v. Astrue,* 578 F.3d 696, 702 (7th Cir. 2009) (holding that determinations must be based on testimony and medical evidence in the record). The ALJ then must explain her analysis of the evidence with enough detail and clarity to permit meaningful appellate review. *Briscoe ex rel. Taylor,* 425 F.3d at 351. Although an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a Listing. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009); *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990).

In her step-three analysis, the ALJ found that Plaintiff's spinal disability did not meet the requirements for Listing 1.04 because "a physical examination in November 2012, revealed normal gait and no focal motor or sensory deficits in the lower extremities, and that Plaintiff's reflexes were intact and straight-leg-raising

6

was negative." (R. 14.) The ALJ also found that Plaintiff's range of motion was "expectedly limited due to the lumbar fusion and that the record did not demonstrate all of the neurological and objective findings required of the listing," and further, Plaintiff could "ambulate effectively." (*Id.*)

Plaintiff argues the ALJ failed to support her Listing 1.04 ineligibility finding with substantial evidence because the ALJ failed to explain the requirements of the Listings and failed to specify which record evidence supported her findings. The Commissioner responds that the ALJ reasonably determined that Plaintiff's disability did not meet or medically equal Listing 1.04 because the Plaintiff failed to prove his condition met or equaled a listed impairment; and the ALJ's discussion of the evidence elsewhere in the opinion supported her step three analysis of Listing 1.04.

Even assuming the Plaintiff has met his burden of proving his condition met or equaled a listed impairment, the Court believes the ALJ's brusque step-three determination is not reversible error. It is clear that the ALJ's step-three analysis examined the Plaintiff's disability under both Listing 1.04(a) and 1.04(c).[2] (R. 14-5; 248.) The ALJ's analysis for Listing 1.04(a) correctly found that Plaintiff's negative straight-leg test precluded an eligibility finding for Listing 1.04(a) which requires: "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss [...] accompanied by sensory or

---

[2] As noted by the Defendant, no evidence in the record shows the Plaintiff suffers from spinal arachnoiditis, one of the primary criterion for Listing 1.04(b). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(K)(2), Listing 1.04(b). Therefore, the ALJ's decision not to include this in her step-three analysis was supported by substantial evidence as there was no reason to discuss Plaintiff's symptoms under Listing 1.04(b).

7

reflex loss," and when the lower back is involved "a positive straight-leg-raising test." (R. 14); *see also* 20 C.F.R., pt. 404, subpt. P, App. 1, 1.04A. Likewise, the ALJ sufficiently explained this finding by citing to Dr. John Gashkoff's November 7, 2011 physical examination of the Plaintiff, which memorialized the aforementioned negative straight-leg raising test. (R. 388-90.)

Similarly, the ALJ's ineligibility-finding for Listing 1.04(c) successfully built a logical bridge between the evidence and her conclusion because the ALJ's discussion of the medical evidence considered in her step-four analysis directly supported her step-three finding that Plaintiff was precluded from Listing-eligibility for 1.04(c). *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (analysis in one section of an ALJ's decision may be properly supplemented and supported by her discussion of the evidence and/or factual findings elsewhere in the decision).

Notably, the ALJ's step-four analysis discussed Plaintiff's treatment records from August of 2011 through April of 2012. (R. 16, citing R. 261-62, 264, 271, 341-42.) These treatment records demonstrate the Plaintiff consistently maintained full-strength in his lower extremities, with no records ever indicating a strength rating falling below a 5/5. (*Id.*) Although these records were not discussed within the ALJ's step-three analysis, the lack of weakness analyzed in her step-four analysis also correctly precludes an eligibility finding for Listing 1.04(c) which requires: "lumbar spinal stenosis resulting in pseudoclaudication […] manifested by chronic

nonradicular pain *and weakness* […]" 20 C.F.R., pt. 404, subpt. P, App. 1, 1.04C. Consequently, the ALJ's step-three analysis was supported by substantial evidence.

### b. The Credibility Determination within the ALJ's Step-Four Analysis.

The Plaintiff next argues that the ALJ erred in making her step-four RFC determination when she failed to support her decision to attribute low credibility to the Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms. In this respect, Plaintiff argues the ALJ erred in three ways: (1) by using reversible "boilerplate" language when making her findings; (2) by failing to explain why she rejected evidence contradicting her finding and; (3) by incorrectly marginalizing the medical opinions of Plaintiff's treating physician, Dr. Richardson, that were contained in her Medical Source Statement and/or her Disability Placard.

Turning to Plaintiff's first argument, the Court does not believe the ALJ's usage of boilerplate language is reversible error. While the ALJ's analysis did in fact incorporate the typical paragraph of "boilerplate language" found to be objectionable by the 7th Circuit, the ALJ used this paragraph rhetorically, as a summary of the findings that she then discussed at length in the subsequent two pages of her analysis. *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013) (the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination.) Those subsequent two pages of her analysis made frequent citation to the record in support of her overall findings about the Plaintiff's credibility. (R. at 15-18.) In sum, those subsequent two

pages provided the Court with a "meaningful, reviewable way of the specific evidence the ALJ considered in determining the claimant's complaints were not credible." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). As such, this is not reversible error.

Before addressing the Plaintiff's second argument which touches directly on the Plaintiff's "credibility", the Court notes that since the ALJ's decision was rendered, the Administration has updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1.

Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new social security regulation to matters on appeal is appropriate where the new regulation is a clarification of, rather than a change to, existing law. *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993) (overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). In determining whether a new rule constitutes a clarification or a change, courts give "great weight" to the stated "intent and interpretation of the promulgating agency." *Id.* at 483. Though a statement of intent is not dispositive, courts defer to an agency's expressed intent to "clarify" a regulation "unless the prior interpretation…is patently inconsistent with the later one." *Id.; see also First Nat. Bank of Chicago v. Standard Bank and Trust,*

172 F.3d 472, 479 (7th Cir. 1999), *Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408 (7th Cir. 1987).

Here, the Administration has specified that its new Social Security Ruling is intended to "clarify" its application of existing rules and to "more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029 at *1; *see* 20 C.F.R. §§ 404.1529, 416.929. Moreover, the two Social Security Rulings are not patently inconsistent. Indeed, a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. *Compare* SSR 16-3p *and* SSR 96-7p. Stated differently, "[t]he agency has had only one position, although it has expressed that position in different words." *Homemakers N. Shore, Inc. v. Bowen*, 832 F.2d at 413. Therefore, it is appropriate to evaluate Plaintiff's credibility argument and the ALJ's evaluation of Plaintiff's subjective complaints in light of the new guidance the Administration has provided.

In light of the new Social Security Ruling, while the ALJ did provide enough justification for the Court to properly examine her review, the Court finds the ALJ's justifications did not build a logical bridge to her ultimate conclusion – that the Plaintiff's statements about the duration, persistence, and level of his pain were inconsistent with the overall medical record.

The ALJ began her step-four analysis by recounting the medical history of the Plaintiff; summarizing the August 2011 through May of 2013 course of treatment that he had undergone for his spinal pain. (R. 15-18.) The ALJ noted that

11

the Plaintiff consistently had difficulties with his back causing pain. (*Id.*) In August 2011 Plaintiff complained of low back pain radiating to the bilateral buttocks. (R. 16; citing R. 342-342.) His pain level was a 5/10, and his physical examination revealed full strength and no abnormalities. (*Id.*) Likewise, Plaintiff's X-ray revealed no migration of intra-body grafts or hardware. (*Id.*) Plaintiff was given no work restrictions. (*Id.*) In September of 2011 the Plaintiff felt better but complained of right-side buttock and sacroiliac joint pain. (R. 279.) Plaintiff was offered injections however, as omitted in the ALJ's opinion; he testified they did not relieve his back pain. (R. 50.) At Plaintiff's October 2011 follow-up appointment, Plaintiff's pain was reported at a 5/10, with regular and pain-free range of motion, and no sensory defects. (R. 271.) Then in December 2011 he again complained of a worse post-injection pain and had a left-side favoring antalgic gait. (R. 314.) Again Plaintiff had normal strength, sensation, and reflexes. (*Id.*) In January 2012, Plaintiff returned to the doctor. (R. 312.) He was observed to have no physical disabilities and exhibited the same normal strength, sensation, and attention. (*Id.*) However, the Plaintiff's pain had elevated to a level of 8/10, and he was assessed with sacroiliac joint dysfunction and status post lumbar fusion. (*Id.*) He was given a trial Transcutaneous Electrical Nerve Stimulation ("TENS") unit to relieve his pain. (*Id.*) In February 2012, the Plaintiff stated the TENS unit reduced his pain by 70%. (R. 309.) However despite helping for a month and a half, the Plaintiff returned to the doctor in April of 2012 complaining he had suffered constant back pain for the prior three weeks. (R. 304.) Also omitted in the ALJ's opinion is an MRI that

Plaintiff underwent in August of 2012, showing spinal abnormalities as well as degenerative changes and scar tissue in his spine. (R. 418-19.) In October of 2012, the Plaintiff then began treating at Access Martin Russo Health Care Center, again complaining of 8/10 pain, an inability to walk long distances due to chronic pain, and the usage of a cane for ambulation. (R. 350-358.) Lastly, the Plaintiff also had an examination on May 22, 2013 that revealed lumbrosacral tenderness and limited range of motion, but no other abnormalities.

After reciting these medical records, the ALJ appeared to weigh them against the Plaintiff's testimony that his pain persists at an 8/10 level. The ALJ noted that the Plaintiff's treatment consists of "TENS usage once a week and some injections." (R. 15). "He is not taking medications for pain." (*Id*.) "He claims they have not helped him in the past and the doctors do not want to prescribe narcotics due to the addictive nature of the medications." (*Id*.) Similarly, the Plaintiff is on "no medication, has had limited treatment and no further care is recommended." (*Id*.) Additionally, the ALJ stated the Plaintiff's 8/10 level of pain is odds with his February 2012 statement describing his pain as "70% resolved." (*Id*.) Lastly, the ALJ noted that while the wife's testimony was "sincere, it was largely based upon the Plaintiff's subjective allegations of pain which are not fully credible." (*Id*.)

However, the ALJ's analysis is flawed as it appears she misapprehended three key portions of the Plaintiff's testimony about his TENS unit, medication, and further treatment. Similarly, she failed to adequately explain why she was not persuaded by contradictory evidence. These errors taken together cast enough doubt

on the ALJ's decision to break the logical link between the evidence and her conclusion.

In her opinion, the ALJ finds an inconsistency between the Plaintiff's reported 8/10 level of pain and the Plaintiff's testimony about his TENS unit, which ALJ characterized as "resolv[ing]" the Plaintiff's pain by 70%. This characterization leads to Court to assume the ALJ believed the TENS unit permanently reduced the Plaintiff's pain to a level of 2.5/10. However, after an examination of both the medical record and Plaintiff's testimony, it is clear the Plaintiff meant his TENS unit relieved his persistent 8/10 pain by 70% *only while the TENS unit was in use*. The ALJ's opinion further highlighted the Plaintiff's infrequent usage of the TENS unit, stating the Plaintiff uses the TENS "unit once a week." However, the ALJ's opinion fails to account for the Plaintiff's explanation that he may only use the TENS unit infrequently because he has "burned out" two prior TENS units, and his insurance will not cover the cost of another TENS unit. Therefore it appears the ALJ misapprehended the evidence about the TENS unit and its usage, and also conflated these two pieces of information to mean that the Plaintiff's 8/10 pain level is exaggerated, and unreflective of the medical record. While this determination may in fact be correct, these pieces of testimony were more nuanced and required more explicit consideration for the Court to conclusively say the ALJ considered them properly.

Likewise, the ALJ also appears to have misapprehended the Plaintiff's testimony about his pain medication. The ALJ's opinion stated that the Plaintiff

simply, "[no longer] uses medication." However, this statement is faulty in two respects. First, during the hearing, the Plaintiff testified that he had used a wide variety of prescription pain medications to no avail. Similarly, the Plaintiff testified that he discontinued using the medications after they caused him malaise, and because his doctors eschewed further prescriptions for fear of addiction. Clearly, and reasonably, the ALJ was skeptical of the Plaintiff's assertion that a battery of prescription-strength pain medications would fail to cause any ascertainable reduction in back-pain whatsoever. However, the ALJ did not articulate this skepticism at all. Instead, the ALJ apparently attributed the medicine's discontinuation to Plaintiff's ostensible lack of necessity, without the required articulation. Secondly, from a reading of the record, while the Plaintiff testified that he no longer takes prescription medications, the ALJ never inquired whether he continues to take *any* pain medications, a factor which should have been probed as it would have bearing on the veracity of Plaintiff's overall statements about his pain intensity, duration, and frequency.

Lastly, the ALJ appears to have mischaracterized the Plaintiff's testimony about any prospective future treatment. The ALJ's opinion stated that the Plaintiff was recommended "no further care." Though ostensibly a minor point, when examined in the light of the misapprehensions discussed *supra* and without more explanation, "no further care" suggests the ALJ believed no more treatment was necessary, leading the Court to believe she might not have considered the full import of this testimony in her analysis. The Plaintiff's wife, the Plaintiff himself,

and the medical records all uniformly rebut the notion that the Plaintiff's condition *does not require more treatment,* but instead echo that *further treatment is futile*, as Plaintiff's condition irreversible and the only remedies for his symptoms have already been offered. The statement is too ambiguous to serve merely as a summary of the Plaintiff's predicament. Further, even if the ALJ intended this statement to be a concise reduction of her belief that the Plaintiff's reticence to seek further treatment is an intentional failure to reasonably mitigate his pain, the ALJ must explicitly say so for a Court to find her decision was based on substantial evidence. In sum, while portions of the aforementioned records and testimony could in fact support the ALJ's analysis, she failed to consider the supporting aspects of the evidence explicitly enough to build a logical bridge to her ultimate conclusion.

Similarly, the ALJ's opinion failed to show she adequately considered contradictory evidence. While the ALJ suggests that the Plaintiff's wife's testimony contradicted her conclusion, she appears to completely discount the testimony as "biased." In doing so the ALJ failed to articulate what degree the wife's bias undermined her "sincere" testimony that is both consistent with the medical record and the Plaintiff's own testimony. Further, the aforementioned medical records establish the Plaintiff's condition could reasonably cause the Plaintiff's claimed level of pain. The records show the Plaintiff was suffering from back pain since the start of February 2011, and that his pain had consistently intensified since that date. The Plaintiff first reported an 8/10 level of pain in July of 2012 and reconfirmed that level of pain during his hearing testimony.

16

Correspondingly, both the Plaintiff and his wife's testimony corroborate this level of pain by not only characterizing the pain as constant and severe, but also showing how the Plaintiff's pain limited his daily functions of life, i.e. by making him unable to sit or stand for prolonged periods, being unable to sleep for more than an hour, being unable to perform most household chores, or being unable to attend his children's sporting events as he cannot sit on a bench. The ALJ does not even show she considered this testimony, much less explains why it supports or contradicts her conclusion.

Lastly, the ALJ failed to mention the August 2012 MRI showing spinal abnormalities as well as degenerative changes and scar tissue in his spine. While the Commissioner is correct to argue that the mere existence of a condition is not evidence that the condition caused the Plaintiff's particular symptoms; when combined with the consistent evidence supporting the Plaintiff's claimed pain levels discussed *supra*, it appears likely that this condition reasonably could cause the Plaintiff's pain to a level that the Plaintiff describes. Although the Court cannot imply that this condition is the cause of the Plaintiff's pain, it is a clearly a condition that *may* cause it and therefore should have been explored and explicitly considered by the ALJ in making her overall determination consistent with SSR 16-3p.

In sum, although pain is a largely subjective matter, the ALJ's reasons for discounting the Plaintiff's testimony about the intensity, persistence, and limiting effects of Plaintiff's pain are not articulated well enough for the Court to find they

are supported by substantial evidence. Although it is clear that the ALJ possessed enough supporting material to articulate her conclusion, its omission combined with a misapprehension of key facts failed to build the required logical bridge between the evidence and the ALJ's conclusion.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**                          **ENTERED:**

**DATE:**    **February 9, 2017**

*/s/ Maria Valdez*

**HON. MARIA VALDEZ**
**United States Magistrate Judge**